UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DEBRA A. PLETZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-0539 |
| ) | |
| MICHAEL V. HAYDEN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b). Plaintiff's second Amended Complaint filed on September 30, 2008, includes three claims against Defendant: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) discrimination on the basis of sex and reprisal for participating in the Equal Employment Opportunity ("EEO") process and by taking away Plaintiff's overtime; and, (3) discrimination on the basis of a hostile work environment based on sex from 2004 to present.

Plaintiff is a Captain in the Central Intelligence Agency's ("CIA") Security Protective Service ("SPS"). Defendant is the Director of the CIA.

At all relevant times to this suit, Plaintiff was employed in the CIA's SPS as a Captain and her immediate supervisor was

David L., a Major in the SPS. At all relevant times, the Chief of SPS was Paul D.

In early 2006, Plaintiff consulted with David L. and Paul D. regarding a subordinate employee whose behavior had become disruptive to other employees. For the purpose of Plaintiff's suit against Defendant and this particular Motion, it is sufficient to say that Plaintiff felt at odds with her supervisors' decisions related to disciplining this subordinate, and Plaintiff was suspicious that David L.'s friendship with the subordinate somehow eased the disciplinary action taken against that subordinate.

After consulting with Paul D. and David L., Plaintiff's initial disciplinary action against the subordinate was to prohibit his attendance at any training session where a particular other employee was also in attendance. Following this action, the subordinate contacted an EEO counselor because he believed he had been slandered by Plaintiff. An EEO officer found that the subordinate had no grounds for claiming slander and the situation was referred back to David L. for an inquiry. David L. modified Plaintiff's corrective action against the subordinate employee by allowing the subordinate to attend training sessions where this other employee was present if the subordinate gained prior approval for attendance.

In August 2006, Plaintiff informed Paul D. that the

subordinate had a alcohol abuse problem. In September 2006, Plaintiff's supervisors removed the subordinate from armed status. During this period, the subordinate lost police powers and was involuntarily committed to an alcohol abuse program for a short time. Consistent with SPS and CIA policy and procedures, the subordinate returned to duty one month later.

On August 16, 2006, an evaluation panel met regarding the promotion of GS-13 officers to the GS-14 grade. The panel was comprised of four males and four females and included minority and disability representatives. Consistent with SPS employment practice, at the panel each senior manager spoke about the performance of the officers in his or her division. The Chief of SPS, Paul D., presented Plaintiff for promotion. Paul D. was a voting member of the panel and the panel's disability representative.

In his discussion, Paul D. told the group that Plaintiff was a solid but not high performer, that she took criticism personally and that her interpersonal communication skills needed to be improved. Based on Plaintiff's difficulty in managing the disbanding of an SPS Branch under her supervision, Paul D. recommended that the panel wait to promote Plaintiff until she had another year of solid performance. Plaintiff's performance evaluation from March 2005 to June 2006 was rated at the "meets expectations" level. The panel agreed with Paul D.'s assessment

and did not recommend Plaintiff for a promotion.

At the time Paul D. informed Plaintiff that she would not be promoted, he confused her with another employee and mistakenly told her that she would be considered for promotion again at the mid-cycle panel in six months.

During the time period at issue, security officers at the Agency could receive pre-scheduled, pre-authorized overtime pay for operational duties such as manning line posts, staffing new construction sites, and supervising special events. These officers could not receive this type of overtime compensation for conducting administrative duties such as routine business activities that could be conducted during normal business hours. Over a span of eight years prior to 2006, this limitation on overtime compensation was periodically discussed at SPS meetings where Plaintiff was present. Most proximate to the incident at issue, Plaintiff attended an "all-hands" meeting on September 21, 2006 where David L. reiterated the Agency's overtime policy for SPS personnel.

In November 2006, Stephen D., a Chief in the SPS and a primary Certifier and Authorizer for SPS time and attendance records, reviewed Plaintiff's time sheets since Plaintiff's immediate supervisor, David L., was out of the office. Stephen D. discovered that Plaintiff had claimed overtime on a recurring basis without explanatory comments and without gaining prior

4

approval. After investigating the matter with Plaintiff's supervisor, Stephen D. determined that Plaintiff's claimed overtime work did not qualify for increased compensation under the SPS policy. Specifically, Stephen D. found that Plaintiff claimed overtime compensation for routine business activities. As a consequence, Stephen D. did not certify this overtime pay and, once David L. discussed this with Plaintiff, Plaintiff removed this overtime from her time records. Male officers who received overtime compensation during this period had sought pre-approval for this compensation for performing in an operational, not administrative, capacity.

In October 2006, Plaintiff contacted an EEO counselor raising allegations of gender discrimination, retaliation, and other claims. On January 3, 2007, Plaintff filed her EEO complaint. After an EEO investigation had been conducted, Plaintiff informed the Administrative Law Judge ("ALJ") that she wished to withdraw her request for a hearing. The ALJ granted Plaintiff's request, and ordered the Agency to issue a Final Agency Decision without the hearing. On March 14, 2008, the Agency issued a Final Decision denying Plaintiff's claims for failure to promote, hostile work environment, and retaliation. In this Decision, the ALJ found that Plaintiff had established a prima facie case of failure to promote in violation of Title VII, but that Plaintiff failed to rebut Defendant's non-discriminatory

reason for failing to promote her. Plaintiff did not appeal this Decision.

Plaintiff filed the present suit on May 28, 2008, and filed her second Amended Complaint on September 30, 2008.

Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Liberty Lobby, 477 U.S. at 248. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)(internal citation omitted).

Under Title VII, the plaintiff bears the initial burden of proving a prima facie case of discrimination in which disparate treatment is alleged. To establish a prima facie case, plaintiff must demonstrate by a preponderance of the evidence that (1) she belongs to a protected class; (2) she was qualified for the job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800-04 (1973). Once a prima facie case is presented, the defendant must then articulate some legitimate reason for the disparate treatment. <u>Id.</u> The articulated nondiscriminatory reason is "presumptively valid," and the plaintiff must then demonstrate that the explanation is pretextual and "meet the ultimate burden of proving intentional discrimination" by a preponderance of the evidence. <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1106 (4th Cir. 1985). The burden of proof never shifts from the plaintiff in a Title VII case. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993).

It is well-established in the Fourth Circuit that to survive a motion for summary judgment the non-moving party must produce "specific facts showing that there is a genuine issue for trial

rather than resting upon the bald assertions of his pleadings." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

Plaintiff has failed to present facts that would satisfy her burden of proof on her Title VII claim for failure to promote. While Plaintiff may have established a prima facie case of discrimination under the McDonnell Douglas framework, she has failed to rebut Defendant's legitimate non-discriminatory reason for not promoting her.

Defendant's rationale for not promoting Plaintiff is that, based on job performance and relative qualifications, Plaintiff was not qualified for promotion to the GS-14 level, and those who were promoted to the position were qualified. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (U.S. 1981).

The eight-person evaluation panel that convened to consider Plaintiff's possible promotion to the GS-14 level included minority and disability representatives, and half the panelists were female. This panel agreed with the Chief of the SPS, Paul D., and found that Plaintiff required at least another year of

solid performance before promotion. Specifically, the panel was concerned with reports that Plaintiff was a solid but not high performer, that she lacked the communication skills required of the higher position, and that she had had some difficulty in managing the disbanding of an SPS branch under her supervision. Further, Plaintiff's most recent performance evaluation was designated at the "meets expectations" level which, while not fatal to her promotion prospects, added to the already stated facts of Plaintiff's performance to weaken her candidacy for promotion.

Defendant's articulated reason for the employment action is presumptively valid and, in order to overcome this presumption, Plaintiff must demonstrate that Defendant's rationale is pretextual and "meet the ultimate burden of proving intentional discrimination" by a preponderance of evidence. Moore, 754 F.2d at 1106.

Plaintiff argues that a supervisor once told her that her "meets expectations" rating would not prevent her from being promoted. Plaintiff reasons that since a male peer with the same performance rating was promoted to the GS-14 level, her own non-promotion is evidence of gender discrimination. However, Plaintiff "must compete for the promotion based on the qualifications established by her employer." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir.

2005). In making promotion decisions, Defendant has decided to review more information than just a candidate's performance review rating. That Plaintiff's entire application for promotion did not surpass that of a male co-applicant with the same performance rating does not establish intentional discrimination by Defendant.

Plaintiff also argues that she had received positive comments from supervisors and in some of her recent performance evaluations which were at odds with the reasons for her non-promotion. Plaintiff suggests that these discrepancies are evidence of discrimination, however, courts in this Circuit have long recognized that "the performance evaluation is a review of an employee's performance in her current position, while the process of selecting a person for a promotion involves a consideration of how that employee will perform in a different position." Westinghouse, 406 F.3d at 272. That Plaintiff received positive feedback on her work does not establish that she was qualified for promotion to another position. This feedback does not establish by a preponderance of evidence that Defendant intentionally discriminated against Plaintiff in the decision not to promote her.

Plaintiff claims that Defendant retaliated against her in violation of Title VII because she took corrective action against a subordinate and because she pursued an EEO claim against

10

Defendant. The Complaint alleges that this retaliation took the form of not promoting Plaintiff and by prohibiting her from claiming overtime hours for certain activities.

In order to state a prima facie claim of retaliation under Title VII, a plaintiff must show that (1) she "engaged in a protected activity;" (2) the Defendant took an adverse employment action against her; and, (3) "the protected activity was causally connected to the adverse action." Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Once a plaintiff has established a prima facie case of retaliation under Title VII, her claim is subject to the same burden-shifting scheme as gender discrimination cases. King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003).

Plaintiff claims that Defendant retaliated against her for taking corrective action against a subordinate. It appears from the record that Plaintiff's action was supported even if her corrective action was ultimately adjusted. More importantly, and fatal to Plaintiff's claim, is that taking corrective action against a subordinate is not a protected activity under Title VII's anti-retaliation section. 42 U.S.C.A. § 2000e-3(a) (listing protected activities as "making charges, testifying, assisting, or participating in enforcement proceedings" of Title VII claims). Therefore, this portion of Plaintiff's complaint fails as a matter of law.

Plaintiff alleges that her supervisors retaliated, i.e. took adverse action, against her for participating in the EEO process. However, Plaintiff fails to show that the protected activity, i.e. her participation in the EEO process, "was causally connected to the adverse action." Holland, 487 F.3d at 218. Even if Plaintiff were able to establish this prima facie case of retaliation, she has not rebutted Defendant's legitimate, non-discriminatory reason for denying Plaintiff's request for overtime compensation. See King, 328 F.3d at 150-51 (applying same burden-shifting scheme from a Title VII gender discrimination claim to a Title VII claim of retaliation). Defendant denied Plaintiff's overtime compensation because of an employment policy prohibiting overtime pay of the kind Plaintiff was seeking. Defendant's policy allows pre-approved overtime compensation for operational tasks such as manning a line post. Plaintiff was seeking overtime compensation, which was not pre-approved, for routine business activities that could be conducted during regular working hours. Plaintiff alleges that she had been compensated at an overtime rate for this type of work before but this does not establish that the Defendant retaliated against her by denying this compensation in the fall of 2006. This denial should not have been a surprise to Plaintiff; she had been in numerous meetings where this policy had been communicated, one just two months prior to the denial of her request for overtime

pay. Plaintiff, like all other male and female SPS Captains, had the ability to earn overtime compensation for pre-approved operational work.

Plaintiff alleges that Defendant created a hostile work environment by (1) belittling Plaintiff's job performance; (2) taking away Plaintiff's overtime; (3) moving Plaintiff to various positions over several years while Plaintiff's male counterparts were allowed to "homestead" in their positions; (4) subjecting Plaintiff to snide remarks from SPS personnel; (5) excluding Plaintiff from correspondence and meetings; (6) Plaintiff's supervisor distancing himself from Plaintiff; and (7) Plaintiff's supervisor making mis-truths and contradictory statements regarding her performance.

In order for her claim of a gender-based hostile work environment to survive, Plaintiff must show that: (1) the conduct about which she complains was unwelcome; (2) that conduct was based on gender; (3) the conduct was sufficiently severe or pervasive to create an abusive work environment; and (4) there is some basis for imposing liability on Plaintiff's employer. Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994). Additionally, the work environment must be both objectively and subjectively offensive; that is, it must be such that a reasonable person would find it hostile, and Plaintiff herself must have perceived it as such. Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

"Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment." Jordan v. Alternative Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006). In sum, whether a work environment is actionably hostile or abusive is a function of the frequency and severity of the conduct at issue; whether it is threatening or humiliating, as opposed to being merely offensively; and, whether such conduct unreasonably interfered with Plaintiff's job performance. Id.

Plaintiff has failed to show that Defendant's conduct created a hostile work environment.

Plaintiff argues that Defendant's belittling of her job performance supports her hostile work environment claim, but she fails to establish the level of severe or pervasive belittling sufficient to satisfy the requirements of the Jordan case. Specifically, Plaintiff has not established threatening or abusive comments directed toward her, nor has she established that these comments were severe or frequent enough to interfere with her job performance. Moreover, this Circuit has stated that hostile work environment "complaints based on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir.

14

2008)(citations omitted).

Plaintiff claims that her overtime compensation was "taken away" because of her gender but fails to establish any correlation between her gender and Defendant's policy not to compensate employees at an overtime rate for conducting administrative tasks. Plaintiff argues that she had been compensated for this type of overtime work in the past but Defendant's adherence to the policy this time does not establish gender-based hostility.

Regarding Plaintiff's claim that her male co-workers were allowed to "homestead" in their positions and she was not, Plaintiff has failed to show that this was due to her gender. Moreover, the record shows that the reasons why Plaintiff's position changed were in reaction to a program reorganization, and in order to expand Plaintiff's responsibilities.

Plaintiff claims that she was subjected to snide comments from SPS personnel but she has failed to show any basis for imposing liability on Defendant for these comments. Further, in the Sunbelt Rentals case, this Circuit deemed that this type of treatment is outside the purview of Title VII. Sunbelt Rentals, 521 F.3d at 315 (holding that rude treatment and callous behavior are outside the purview of Title VII).

Finally, Plaintiff argues that several other types of behavior establish her claim of a gender-based hostile work

15

environment. Plaintiff's examples of this workplace behavior include that she was excluded from workplace correspondence, that her supervisor distanced himself from her, and that her supervisor "made mis-truths" and contradictory statements about her. Each of these examples fail to support Plaintiff's claim for the same reasons cited above. Primarily they fail because Plaintiff has not shown that these actions were related to her gender. Moreover, these examples, even when viewed in conjunction with all the other examples of allegedly hostile behavior, fail to evidence a pattern of behavior sufficiently severe or pervasive enough to create an abusive work environment.

Plaintiff has failed to rebut Defendant's legitimate non-discriminatory reason for not promoting her, and for denying her overtime compensation. For these reasons, Plaintiff's claims of gender-based discrimination and retaliation in violation of Title VII fail to establish a genuine issue of material fact remaining for trial. Further, even viewing the facts in the light most favorable to Plaintiff, her gender-based hostile work environment claim also fails to establish any material facts remaining for trial. For the reasons stated above, Defendant is entitled to summary judgment.

An appropriate Order shall issue.

>                     /s/
>             Claude M. Hilton
>          United States District Judge

Alexandria, Virginia
February 4, 2009